UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WANDA CONWAY, on behalf of
TYANA TOLEN,

　　Plaintiff,

　　v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

　　Defendant.

Civil Action No. 06-578 (CKK)

**MEMORANDUM OPINION**
(May 23, 2008)

Currently pending before the Court are Plaintiff's Motion for Judgment of Reversal and

Defendant's Motion for Judgment of Affirmance, respectively, of the decision of an

Administrative Law Judge ("ALJ") denying Supplemental Security Income Benefits ("SSIB") to

Plaintiff, Tyana Tolen, pursuant to Title XVI of the Social Security Act.  After reviewing the

parties' briefs, the administrative record, and the relevant case law, the Court shall deny

Plaintiff's motion to reverse the judgment and grant Defendant's motion to affirm the judgment.[1]

**I: BACKGROUND**

*A.*　　*Legal Framework and Procedural History*

On October 18, 2002, Wanda Conway filed an application for SSIB on behalf of her

---

[1] Plaintiff's Complaint named as the Defendant the then-Commissioner of Social Security, Jo Anne B. Barnhart.  *See* Compl., Caption.  As Ms. Barnhart was sued in her official capacity, the Court has substituted the current Commissioner of Social Security, Michael J. Astrue, as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

daughter, Tyana Tolen (born in 1997)[2] (hereinafter "Plaintiff"), pursuant to Title XVI of the

Social Security Act.  Mem. in Support of Pl.'s Mot. for J. of Rev. (hereinafter "Pl.'s Rev. Mot.")

at 1-2; Admin. Record ("A.R.") at 53.[3]  Plaintiff's application for SSIB alleged disability on the

basis of a learning disability, a weight problem, and aggressive behavior.  A.R. at 62.

      After Plaintiff's claims were denied initially and upon reconsideration, she requested a

hearing before an ALJ.  A.R. at 15, 27-29, 30, 32.  That hearing occurred on April 13, 2005, and

Plaintiff was represented by counsel.  *Id.* at 156-80.  In a decision dated July 26, 2005, the ALJ

denied Plaintiff's requested benefits.  *Id.* at 12-24.   In order to place the ALJ's opinion in

context, the Court sets forth below some of the legal framework relevant to Plaintiff's application

for SSIB.

      To be eligible for SSIB, a child must be disabled under the meaning of Title XVI of the

Social Security Act.  20 C.F.R. § 416.901.  The Social Security Administration ("SSA") will

consider a child disabled if he or she has "a medically determinable physical or mental

impairment or combination of impairments that causes marked and severe functional limitations,

and that . . . has lasted or can be expected to last for a continuous period of not less than 12

months."  20 C.F.R. § 416.906.  A three-step sequential evaluation is used to determine whether

a child is eligible for SSIB on the basis of a disability.  20 C.F.R. § 416.924.  This evaluation

---

[2] Plaintiff was seven years old and in the second grade at the time of the administrative hearing in this matter in April 2005.  *See* Admin. Record ("A.R.") at 16.  Plaintiff's Motion for Judgment of Reversal indicates that she was nine years old at the time that motion was filed on September 25, 2006.  Mem. in Support of Pl.'s Mot. for J. of Rev. ( "Pl.'s Rev. Mot.") at 2.  The Court therefore assumes that Plaintiff is now either ten or eleven years old.

[3] Plaintiff's application alleged disability commencing November 1, 2001; however, at her administrative hearing, Plaintiff amended her onset date to October 18, 2002, the protective filing date of her application for benefits.  Pl.'s Rev. Mot. at 1-2 & n.2; *see also* A.R. at 53.

2

involves determining: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or a combination of impairments that is severe; and (3) whether the child has an impairment(s) that meets, medically equals, or functionally equals the listings included in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  If the child is engaged in substantial gainful activity or does not have an impairment or combination of impairments that is severe, the child is considered not disabled and the evaluation does not progress to the next step.  *Id.*

In determining whether a child's impairment(s) functionally equal a listed impairment, the SSA considers six separate "domains," or areas, of functioning, which include: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being.  20 C.F.R. § 416.924a(b)(1)(i)-(vi).  In order to functionally equal a listed impairment, a child's impairment "must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  *Id.* § 416.926a(a).  A "marked" limitation exists when a child's impairment "seriously interferes" with his or her "ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2)(i).  The SSA describes a "marked" limitation as "more than moderate" but "less than extreme," and will generally find a "marked" limitation when a child has a "valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score."  *Id.* § 416.926a(e)(2)(i), (iii).  An "extreme" limitation is "more than marked" but "does not necessarily mean a total lack or loss of ability to function."  *Id.* § 416.026a(e)(3)(i).  The SSA

3

will generally find an "extreme" limitation when a child has a "valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score."  *Id.* § 416.926a(e)(3)(iii).

In the instant case, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during any part of the period under adjudication.  A.R. at 16.  At Step Two, the ALJ found that Plaintiff had "learning disability and obesity, which are 'severe' within the meaning of 20 C.F.R. § 416.924(c) and Social Security Rulings 96-3p and 85-28 because [Plaintiff] has more than slight abnormalities and more than minimal functional limitations."  *Id.* Turning to Step Three, the ALJ found that Plaintiff did not meet or medically equal Section 112.05 ("Mental Retardation") of the SSA' Childhood Listings for disability evaluation under Social Security.  *Id.* at 17.

The ALJ then continued to consider "whether [Plaintiff] has an impairment (or combination of impairments) that is 'functionally equal' to the listings and satisfies the 12-month duration requirement."  *Id.*   The ALJ detailed all of the evidence contained in the Administrative Record in this case, including the testimony during the administrative hearing, and found that Plaintiff had "marked" limitation in the domain of Acquiring and Using Information "but based upon current evidence has improved and is doing better" in that domain.  A.R. at 18.  As to the remaining domains, the ALJ found that Plaintiff had either "less than 'marked' limitation" or no limitation."  *Id.* at 18-20.  Ultimately, the ALJ concluded that "[b]ecause [Plaintiff] does not have an 'extreme' limitation in one area of functioning or a 'marked' limitation in two areas, [Plaintiff] does not functionally equal, singly or in combination, any listed impairment."  *Id.*  at

4

17-22.  Finally, having determined that Plaintiff "does not have an impairment or combination of

impairments which meets [or] medically equals any listing, or functionally equals any listing,"

the ALJ concluded that Plaintiff is not "disabled" for purposes of eligibility for SSIB.  *Id.* at 22-

23.

 Plaintiff appealed the ALJ's decision, but on January 26, 2006, the Appeals Council

determined there was no basis for granting review.  A.R. at 4-6.  Having fully exhausted her

administrative remedies, Plaintiff filed suit in this Court seeking relief on March 28, 2006.

Plaintiff filed her Motion for Judgment of Reversal on September 25, 2006, and Defendant filed

its Motion for Judgment of Affirmance on November 13, 2006.  Neither party has filed an

opposition to the other party's motion.

 B. *Evidence Contained in the Administrative Record*

 The ALJ evaluated Plaintiff's condition based on evidence including various medical

records (both physical and mental health records), District of Columbia Public Schools

("DCPS") records, and the testimony of Plaintiff and her mother during the administrative

hearing in this case.  The Court recounts below the most relevant portions of the administrative

record.

 1. *Medical Records*

 Dr. Alberta M. Vallis conducted a psychological examination of Plaintiff on June 18,

2002.  A.R. at 114-16.  At the outset of her report, Dr. Vallis noted that Plaintiff's pre-

kindergarten teacher was concerned about Plaintiff's slow ability to learn, and that Plaintiff's

mother was concerned with Plaintiff's behavior, including cursing, disrespectful, disobedient,

and aggressive behavior.  *Id.* at 114.  Dr. Vallis, however, reported that Plaintiff was pleasant and

co-operative, and that her attitude toward Dr. Vallis was appropriate. *Id.* at 114-15. Among other things, Dr. Vallis noted that Plaintiff's speech had some sound errors, including poor articulation of Ts and Ys, that her thought process was intact, but aggressive and immature, and that she had poor insight and was unable to judge situations well. *Id.* at 115-16. Dr. Vallis diagnosed Plaintiff with Child Adjustment Disorder and Oppositional Defiant Disorder, and described her as obese. *Id.* at 116. Dr. Vallis rated Plaintiff's Global Assessment of Functioning at 40, *id.*, which Plaintiff notes is described as some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Pl.'s Rev. Mot. at 7-8 n.6 (citing *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Ed., Am. Psych. Assoc., p. 32). Dr. Vallis recommended that Plaintiff undergo weekly individual therapy and a work-up for special education. A.R. at 116.

On December 19, 2002, Neil P. Schiff, Ph. D., conducted a psychological examination of Plaintiff in connection with her application for SSIB. *Id.* at 117-20. Dr. Schiff interviewed Plaintiff, and also administered the Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R) and Vineland Adaptive Behavior Scales (VABS) tests. *Id.* at 117. On the WPPSI-R, Plaintiff attained a verbal IQ score of 84, a performance IQ score of 60, and a full scale IQ of 69. *Id.* Interpreting these test results, Dr. Schiff noted that Plaintiff's "current overall functioning (Full Scale IQ) falls in the Deficient range of intelligence, with estimated potential likely to be considerably higher than that range." *Id.* at 119. Dr. Schiff continued to explain that Plaintiff's "verbal abilities (Low Average range) were more strongly developed than her non-verbal abilities (Deficient range of functioning)." *Id.* As for the VABS, Plaintiff attained an

adaptive behavior composite of 76 (moderately low), *id.* at 117, a score that Dr. Schiff described

as commensurate with Plaintiff's WPPSI-R scores, *id.* at 119.

Significantly, Dr. Schiff's report noted that Plaintiff had not yet been scheduled for an

Individualized Education Plan ("IEP") evaluation and was still placed in a regular classroom. *Id.*

at 118. Dr. Schiff also stated that "it is important to note that while intelligence test scores at this

young age are fairly predictive of early school performance, their stability over time can be

limited. As such, it may be informative to re-test [Plaintiff] after another year or two of

maturation." *Id.* at 119. This statement is consistent with the SSA's approach of relying on

standardized test scores; in the Childhood Listings, the SSA notes that "IQ test results must also

be sufficiently current for accurate assessment under [Listing] 112.05. Generally, the results of

IQ tests tend to stabilize by the age of 16 . . . IQ test results obtained before age 7 are current for

2 years if the tested IQ is less than 40 and 1 year if at 40 or above." 20 C.F.R. Part 404, Subpart

P, Appx. 1, § 112.00D10. Finally, in his report, Dr. Schiff recommended that Plaintiff receive

special education placement, including consideration of her difficulties with impulse control and

frustration intolerance, speech and language, and social functioning. A.R. at 120.

On March 12, 2003, Dr. Eric C. Marshall noted that as of December 19, 2002, plaintiff

had Impulse Control Disorder, NOS, Learning Disorder, NOS, and mild mental retardation. *Id.*

at 121. Dr. Marshall reported that Plaintiff's developmental milestones were commensurate with

her chronological age, and that no specific body systems were affected by Plaintiff's diagnoses.

*Id.* Dr. Marshall noted that Plaintiff had been administered the WPPSI-R and the VABS, that

Plaintiff was placed in special education, and that while Plaintiff's prognosis was good, she

would need some adult management of certain independent activities of daily living (IADL). *Id.*

Dr. Iinez Hinds conducted a consultative examination of Plaintiff on May 5, 2003. *Id.* at 132-35. In her May 7, 2003 report of that examination, Dr. Hinds noted that Plaintiff weighed 95 pounds and appeared obese. *Id.* at 134. Plaintiff's eyes, ears, nose, throat, neck, and chest appeared normal, and Plaintiff had a slight heart murmur. *Id.* at 134-35. Dr. Hinds noted that Plaintiff had breast development bilaterally and hyperpigmentation on the skin of her chest. *Id.* at 135. Finally, Dr. Hinds noted that Plaintiff had full range of motion of her extremities and that her neurological examination was unremarkable and Plaintiff followed direction well. *Id.*

On January 31, 2004, Plaintiff underwent a psychological and educational assessment by DCPS psychologist Susan Elbert, MS, LCPC. *Id.* at 144-47. Ms. Elbert noted that Plaintiff's earlier evaluations concluded that she was functioning in the mildly retarded range, with impulse control problems, learning disabilities, and physical problems. *Id.* at 144. Ms. Elbert, however, recounted an interview with Plaintiff's then-current teacher, who "strongly disagreed with previous test results." *Id.* Plaintiff's teacher reported that Plaintiff behaved well in class but was demonstrating speech and language delays as well as academic lags when compared with her peers. *Id.* Plaintiff's teacher also reported that Plaintiff's personal strengths included good social skills and an artistic flair, that Plaintiff was shy and worked slowly, and that she did well when instructed in one-to-one situations. *Id.*

Ms. Elbert's report indicates that Plaintiff was administered the WIAT (Wechsler Individual Achievement Test), Test of Nonverbal Intelligence, Third Edition (TONI-III), and Bender Visual Motor Gestalt (Bender-Gestalt) Test. *Id.* at 145-47. These tests suggested that Plaintiff had at least low average intellectual potential but was functioning below her grade level. *Id.* at 145. Ms. Elbert reported that Plaintiff was chronologically and cognitively appropriate,

and evidenced an approximate one year visual motor delay, which she described as not

significant. *Id.* at 145. Ms. Elbert suggested that Plaintiff's "expressive/receptive

speech/language delays" might be negatively impacting her academic progress, but noted that

Plaintiff's concentration and focus remained good throughout the assessment. *Id.* at 145-46. Ms.

Elbert recommended that Plaintiff receive special help in the areas of her academic delays, and

be provided extra time when required to produce written work. *Id.* at 147. Ms. Elbert also

recommended that an IEP conference be convened and that Plaintiff undergo further testing at the

end of the school year to determine if a processing delay existed. *Id.*

       *2.     School Records*

       The Administrative Record also contains Plaintiff's records from DCPS for the period

November 20, 2001 to March 16, 2005. A.R. at 84-94, 105-112, 148-56. According to those

records, Plaintiff's pre-kindergarten teacher reported that Plaintiff should be tested for special

education services and was performing below average academically and socially. *Id.* at 84-86.

On November 26, 2002, Plaintiff's kindergarten teacher reported that Plaintiff had no problems

in four of the six domains of functioning (Interacting and relating with others; Moving about and

manipulating objects; Caring for herself; and Health and physical well-being). *Id.* at 90-94. In

the domain of Acquiring and using information, Plaintiff's kindergarten teacher reported that

Plaintiff had an obvious problem with understanding and participating in class discussions, a

slight problem with expressing ideas in written form, and a serious problem with recalling and

applying previously learned material. *Id.* at 88. In the domain of Attending and completing

tasks, Plaintiff's kindergarten teacher reported that Plaintiff had slight problems with carrying out

multi-step instructions and completing work accurately without careless mistakes. *Id.* at 89.

The Administrative Record also contains a February 23, 2004 IEP report, which notes that Plaintiff produced work slowly and functioned below grade level non-verbally. *Id.* at 105-112. Plaintiff's March 16, 2005 IEP report noted that Plaintiff's fluent reading for her grade level was still not evident, but that Plaintiff had good word attack skills, recognized over 100 words, and enjoyed reading. *Id.* at 150. The March 2005 report also noted that Plaintiff had "made <u>excellent</u> progress in the classroom" and that her regular education teacher reported that she was compliant and would attempt all assignments presented to her. *Id.* at 155 (emphasis in original).

3.   *Transcript of the Administrative Hearing in This Case*

Both Plaintiff and her mother testified at the April 13, 2005 administrative hearing in this case. *See id.* at 158-80. Plaintiff testified that she had no problem with school work or chores, that her favorite subject was math, and that she had a best friend. *Id.* at 159-64. Plaintiff also testified that she had problems getting along with one of the boys at school and with her older sister. *Id.* Plaintiff's mother testified that Plaintiff fought with her older sister, could be very difficult, and needed to be reminded to do her chores. *Id.* at 165-66. Plaintiff's mother also testified that Plaintiff was in a special needs program part-time at school due to difficulty focusing, that Plaintiff got frustrated quickly, and that Plaintiff was not taking medication. *Id.* at 167-80.

**II: LEGAL STANDARD**

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of*

10

*HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)).  A court will not disturb the determination of the

Commissioner if it is based on substantial evidence in the record and the correct application of

the relevant legal standards.  42 U.S.C. §§ 405(g), 1383(c); *Butler v. Barnhart*, 353 F.3d 992,

999 (D.C. Cir. 2004).  Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (citation omitted).  While a scintilla of evidentiary support is insufficient, the test can be

satisfied by "something less than a preponderance of the evidence."  *Fla. Mun. Power Agency v.

FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003).  In reviewing an administrative decision, a court

may not determine the weight of the evidence, nor substitute its judgment for that of the

Secretary if his decision is based on substantial evidence.  *Butler*, 353 F.3d at 999; *Hays v.

Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  While the reviewing court must carefully

scrutinize the entire record, *Butler*, 353 F.3d at 999, it is not to review the case "de novo" or

reweigh the evidence, *Ware v. Barnhart*, 357 F. Supp. 2d 134, 138 (D.D.C. 2004) (citing *Davis v.

Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983)).  Instead, the Court determines whether the

ALJ "has analyzed all the evidence and has sufficiently explained the weight he has given to

obviously probative material."  *Simms*, 877 F.3d at 1050.[4]

---

[4] Generally speaking, because "the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant."  *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994)).  Nevertheless, the Court notes that in the particular context at issue here, Congress amended the definition of "disabled" for children seeking SSIB in 1996, and the that "[t]he thrust of [that] legislation was most certainly to tighten eligibility."  *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 83 (2d Cir. 2003) (citing Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193 (1996)).

# III:  DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed, or in the alternative remanded to the Social Security Administration for a new hearing, and makes three arguments in support of these requests.  First, she argues that the ALJ failed to properly consider whether her condition met or equaled a listed impairment.  Pl.'s Rev. Mot. at 3-5.  Second, she argues that the evidence of record demonstrates that she satisfies Listing 112.05 of the Childhood Listings.  *Id.* at 5-10.  Less strenuously, Plaintiff argues that the ALJ erroneously determined that her impairment was not functionally equivalent to any Listing.  *Id.* at 10-11.  Defendant disputes Plaintiff's characterization of the ALJ's opinion, asserting that the ALJ's decision was supported by substantial evidence.  *See generally* Mem. in Support of Def.'s Mot. for J. of Aff. and in Resp. to Pl.'s Mot. for J. of Rev. (hereinafter "Def.'s Aff. Mot.").

Plaintiff's arguments for reversal of the ALJ's decision are essentially of two stripes: first, that the ALJ failed to sufficiently explain his conclusions that Plaintiff's condition does not meet or equal a listed impairment and is not functionally equal to a listed impairment, and second, that the record evidence demonstrates that Plaintiff's condition does, in fact, meet Listing 112.05.  Plaintiff's first objection appears to be of a procedural nature, while her second is of a more substantive nature.  With respect to Plaintiff's procedural challenge, the Court recognizes at the outset that the ALJ's opinion does not specifically correlate his conclusions with the precise record evidence he relied upon in reaching each conclusion.  Nevertheless, the Court finds that, on the whole, the law was appropriately applied and the ALJ's opinion was supported by sufficient evidence.  In particular, the Court notes that the ALJ explicitly considered each piece of the record evidence, and that Plaintiff has not identified any portions of the Administrative

12

Record overlooked or ignored by the ALJ.  The Court shall therefore deny Plaintiff's motion for

a judgment of reversal and grant Defendant's motion for a judgment of affirmance.

> A.     *The ALJ Properly Considered Whether Plaintiff's Condition Met or Equaled a
> Listed Impairment*

Plaintiff first argument is that the ALJ did not properly consider whether Plaintiff's

condition met or medically equaled a listed impairment because the ALJ "failed to mention any

of the criteria of Listing 112.05, and his explanation does not address any of the criteria of this

Listing."  Pl.'s Rev. Mot. at 3-4.  As noted above, this appears to be a procedural, rather than

substantive, argument.  Plaintiff does not, however, cite any case law indicating that an ALJ is

required to specifically address each criteria of a relevant Listing.  *See generally id.*; *see also*

*Ware*, 357 F. Supp. 2d at 139 n.4 ("The plaintiff argues specifically that the ALJ inadequately

explained his decision by failing to reference the particular elements of Listing 112.04 . . .

However, the plaintiff does not cite any case requiring this level of detail.").  While Plaintiff does

cite cases in which courts have found an ALJ's consideration of whether a plaintiff's conditions

met or medically equaled a listed impairment to be insufficient, the ALJs in those cases offered

only a general conclusion that the plaintiff's conditions did not meet or medically equal *any*

listed impairment, without specifically identifying the Listings considered.  *See Davis v. Shalala*,

862 F. Supp. 2d at 6 ("neither the ALJ in his written decision, nor the Appeals Council, appear to

have considered Listing 1.12 . . . the ALJ made a general finding that the evidence failed to

establish that the Plaintiff's impairments meet or equal any Listing."); *Cook v. Heckler*, 783 F.2d

1168, 1172-73 (4th Cir. 1986) ("the decision failed to identify the standard to be applied . . . The

ALJ did not explain which of those listed impairments were considered to be relevant."); *see also*

*Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 519 (D. Md. 2002).

In contrast, the ALJ in this case specifically identified the relevant Listing–Section 112.05, entitled "Mental Retardation"–and explained his reason for concluding that Plaintiff's impairment did not meet or medically equal the Listing.  The ALJ stated:

> The claimant does not meet or medically equal section 112.05, entitled "Mental Retardation."  While the claimant obtained a full scale IQ of 69 on the WPPSI-R [which is found not fully credible in light of other evidence] in December 2002 (Exhibit 2F), she has been doing well in school with support, of teachers and special education programs.  Subsequent school records revealed that the claimant had good word attack skills; recognized over 100 words and enjoyed reading (Exhibit 9F).  The claimant was recommended for only limited participation in the special education program {31%} and attends regular classes for other classes.  The claimant's teacher reported on March 16, 2005 that the claimant was compliant in class; and attempted to complete all assignments.  The claimant had no problems with interracting [sic] and relating to others; no problem moving and manipulating objects and no problem carrying [sic] for herself in an age-appropriate manner.  Per the claimant and her mother [sic] testimony at the hearing, the claimant was since amended onset date doing well in school but still needed some help; got along well with her school peers; performed her chores at home; and enjoyed playing.

A.R. at 17.

The Court finds this explanation sufficient, from a procedural standpoint.  Significantly, one of Plaintiff's own citations demonstrates the adequacy of the ALJ's explanation.  As Plaintiff herself quotes, in *Schoofield*, the United States District Court for the District of Maryland concluded that:

> When the evidence in the administrative record clearly generates an issue as to a particular listing . . . and the ALJ fails to properly identify the [Listing] considered . . . and to explain clearly the medical evidence of record supporting the conclusion reached . . . a remand can be expected to result, *except in those circumstances where it is clear from the record which listing or listings . . . were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the . . . analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's .*

. . *conclusion*.

220 F. Supp. 2d at 522 (emphasis added).  The ALJ's opinion in this case falls directly into the

exception set out by the *Schoofield* court, as it specifically identifies Listing 112.05, describes the

ALJ's reasons for concluding that Plaintiff's condition does not meet or medically equal that

Listing, and goes on to discuss the evidence in the record in significant detail.  *See*

*generally* A.R. at 15-23.  The Court therefore rejects Plaintiff's argument that the ALJ's opinion

must be reversed because it does not specifically address the criteria contained in Listing 112.05.

> B.     *The ALJ's Conclusion That Plaintiff's Condition Did Not Meet or Medically*
>        *Equal a Listed Impairment Is Supported By Substantial Evidence*

Plaintiff next argues that the ALJ's opinion is substantively erroneous because "the

evidence of record reveals that the Plaintiff does satisfy the criteria of Listing 112.05."  Pl.'s Rev.

Mot. at 5-10.  Listing 112.05 is entitled Mental Retardation, and states that the required level of

severity for the disorder is met when the requirements in section A, B, C, D, E, or F of the

Listing are satisfied.  *See* 20 C.F.R. Part 404, Subpart P, Appx. 1, § 112.05.  Plaintiff only argues

that she satisfies the criteria of Listings 112.05D, 112.05E, and 112.05F.  Listing 112.05D is

satisfied by a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other

mental impairment imposing an additional and significant limitation of function."  *Id.* § 112.05D.

Listing 112.05E is satisfied by a "valid verbal, performance or full scale IQ of 60 through 70 and

. . . [f]or children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or

B2c or B2d of 112.02."  *Id.* § 112.05E.  In turn, paragraphs B2b, B2c, and B2d of Listing 112.02

involve:

> b.  Marked impairment in age-appropriate social functioning, documented by
> history and medical findings . . . and including, if necessary, the results of

appropriate standardized tests; or

c.  Marked impairment in age-appropriate personal functioning, documented by
history and medical findings . . . and including, if necessary, the results of
appropriate standardized tests; or

d.  Marked difficulties in maintaining concentration, persistence, or pace.

*Id.* § 112.02B2.  Finally, for children, Listing 112.05F is met by the satisfaction of Listing

112.02B2a, which involves "[m]arked impairment in age appropriate cognitive/communicative

function, documented by history and medical findings . . . and including, if necessary, the results

of appropriate standardized tests, or for children under age 6, by appropriate tests of language and

communications," *id.* § 112.02B2a, and a physical or mental impairment imposing an additional

and significant limitation of function.  *Id.* § 112.05F2.

       Plaintiff's arguments that she satisfies Listings 112.05D and 112.05E are both premised

upon her December 2002 full scale IQ score of 69 and performance IQ score of 60.  *See* Pl.'s

Rev. Mot. at 8-9.  As noted above, however, the ALJ's opinion specifically recognized Plaintiff's

December 2002 Full Scale IQ score and found that it was "not fully credible in light of other

evidence."  A.R. at 17.  Although Plaintiff states that the ALJ provided no explanation for this

conclusion and referenced no evidence indicating that the test scores reported by Dr. Schiff were

in any way invalid, Pl.'s Rev. Mot. at 8 n.7, when read in context, the ALJ's finding regarding

the credibility of Plaintiff's December 2002 IQ score appears to be based on his review of the

evidence demonstrating Plaintiff's improvement in school and her interaction with others in the

period after the test was conducted.  *See* A.R. at 17.  Moreover, the ALJ's conclusion that

Plaintiff's December 2002 IQ scores were not fully credible as of his July 2005 opinion is

entirely consistent with both the SSA Listings and Dr. Schiff's report.  As noted above, the SSA

Listings provide that "IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above," 20 C.F.R. Part 404, Subpart P, Appx. 1, § 112.00D10, and Dr. Schiff's report notes that the stability over time of scores from an intelligence test performed at a young age can be limited, and suggests that "it may be informative to re-test [Plaintiff] after another year or two of maturation." A.R. at 119.[5]  Plaintiff was five years old at the time of her December 2002 IQ test.  As such, when the ALJ reviewed Plaintiff's scores two and a half years later, they were no longer current, per both the SSA Listings and Dr. Schiff's report.

Plaintiff thus errs in arguing that the evidence of record demonstrates that she satisfies Listings 112.05D and 112.05E because the IQ scores Plaintiff relies upon were not sufficiently current, at the time of the ALJ's opinion, to demonstrate that Plaintiff's condition meets or medically equals those Listings.  As to Listing 112.05F, in addition to again noting her December 2002 IQ scores, Plaintiff argues that she "has been diagnosed with Impulse Control Disorder, Learning Disorder, Child Adjustment Disorder, and Oppositional Defiant Disorder, impairments which impose additional and significant limitations of function," and that her Global Assessment of Function has been rated at 40.  Pl.'s Rev. Mot. at 9-10.  Again, however, all of the scores and diagnoses upon which Plaintiff relies were at least two and a half years old by the time of the ALJ's opinion and by now are at least five years old.  The more recent record evidence comes in the form of Plaintiff's IEP reports and the testimony during the administrative hearing in this case.  As the ALJ accurately summarized, that evidence reveals that Plaintiff

---

[5] The ALJ's opinion specifically noted Dr. Schiff's suggestion that Plaintiff be retested in another year or two.  A.R. at 21.

has been doing well in school with support, of teachers and special education
program.  [Plaintiff's] school records revealed that [she] had good word attack
skills; recognized over 100 words and enjoyed reading . . . [Plaintiff] was
recommended for only limited participation in the special education program
{31%} and attends regular classes for other classes.  [Plaintiff's] teacher reported
on March 16, 2005 that [Plaintiff] was compliant in class; and attempted to
complete all assignments. . . .  Per [Plaintiff] and her mother [sic] testimony at the
hearing, [Plaintiff] was since amended onset date doing well in school but still
needed some help; got along well with her school peers; performed her chores at
home; and enjoyed playing.

A.R. at 17; *see also* A.R. at 148-56 (March 2005 IEP Report); 158-80 (Hrg. Tr.).

Plaintiff does not point to any evidence in the record that contradicts the ALJ's summary

of the evidence of Plaintiff's school performance and interactions with others after the various

2002 tests.  Nor does Plaintiff identify any piece of evidence overlooked or ignored by the ALJ.[6]

As such, the Court concludes that the record evidence does not support Plaintiff's claim that her

condition meets Listing 112.05F because Plaintiff's argument in that respect is based on older

test scores that the ALJ found to be discredited by later record evidence.  Finally, the Court notes

that the ALJ's conclusion that Plaintiff's condition does not meet or medically equal a listed

impairment is consistent with the conclusion reached in a Childhood Disability Evaluation Form

completed by Patricia Cott, Ph. D. on March 7, 2003, updated on July 24, 2003 by Dr. Cott and

---

[6] In her Motion for Judgment of Reversal, Plaintiff states that the ALJ did not mention
various pieces of evidence–including Plaintiff's December 2002 Performance IQ score of 60,
Plaintiff's VABS score, and Dr. Vallis' findings–"when evaluating whether the Plaintiff's
impairments met or equaled a Listed Impairment."  Pl.'s Rev. Mot. at 7 ns. 3-5. The ALJ did,
however, mention Plaintiff's VABS score and Dr. Vallis' findings.  *See* A.R. at 17, 20-21.  While
the ALJ did not discuss that evidence in the paragraph containing his conclusion that Plaintiff's
condition did not meet or medically equal a listed impairment, Plaintiff offers no case law
evidencing such a requirement.  Further, although Plaintiff is correct that the ALJ's opinion does
not mention Plaintiff's Performance IQ score of 60, this is immaterial because the ALJ did
mention Plaintiff's Full Scale IQ score of 69, and Listing 112.05 does not distinguish between IQ
scores in the range of 60 through 70.  *See* A.R. at 17; 20 C.F.R. Part 404, Subpart P, Appx. 1 §
112.05D-E.

Julian Perry, M.D., and affirmed on February 11, 2004.  *See* A.R. at 138-43.

In sum, the Court finds that substantial evidence of record supports the ALJ's conclusion that Plaintiff's condition does not meet or medically equal Listing 112.05.  The Court therefore rejects Plaintiff's argument that the ALJ erred substantively in finding that Plaintiff's condition does not meet or medically equal Listing 112.05.

C.    *The ALJ Properly Considered Whether Plaintiff's Condition Functionally Equaled a Listed Impairment, and His Conclusion Is Supported by Substantial Evidence*

Plaintiff's final, and more cursory, argument is that the ALJ erroneously determined that Plaintiff did not suffer a marked impairment in any domain of function and that, as a result, her condition did not functionally equal a listed impairment.  Pl.'s Rev. Mot. at 10-11.  Plaintiff argues, in another apparently procedural argument, that the ALJ's analysis is insufficient because it does not reveal what evidence the ALJ considered in evaluating each domain of functioning. *Id.* at 11.  Plaintiff's argument in this respect consists primarily of a long block quotation from the D.C. Circuit's opinion in *Butler*, 353 F.3d 992.  That case, however, is readily distinguishable because the ALJ in that case "failed to explain away, or even acknowledge . . . three specific opinions" by the plaintiff's treating physician that directly contradicted the ALJ's conclusions. *Id.* at 1002.  Here, Plaintiff does not point to any record evidence overlooked or ignored by the ALJ, and certainly does not identify specific evidence that contradicts the ALJ's findings with respect to Plaintiff's limitations, or lack thereof, in the various domains of functioning.  Pl.'s Rev. Mot. at 10-11.  Nor does Plaintiff proffer any case law requiring that an ALJ specifically identify the evidence evaluated with respect to each domain of functioning.

In the instant case, the ALJ correctly detailed the standards applied in determining

19

whether a child's impairment(s) functionally equal a Listing, including the need to evaluate the six domains of functioning.  A.R. at 17.  The ALJ continued to note his findings with respect to each domain, *id.* at 18-20, and then to discuss–in great detail–the record evidence, prefacing that discussion with the statement that "[i]n determining [Plaintiff's] functional[] limitations, the undersigned has carefully reviewed the evidence in the record, including the testimony taken at the hearing," *id.* at 20.  It might be preferable, at least for purposes of judicial review, for an ALJ to correlate the evidence relied upon with each specific finding of functional limitation; nevertheless, the Court concludes that the ALJ's opinion in this instance demonstrates that the ALJ "has analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative material."  *Simms*, 877 F.3d at 1050.

Plaintiff's arguments regarding the ALJ's assessment of Plaintiff's functional limitations focus upon the nature of the ALJ's analysis.  However, insofar as Plaintiff also suggests, as a substantive matter, that the ALJ erroneously concluded that Plaintiff's condition was not functionally equal to a listed impairment, the Court again notes that Plaintiff does not identify any specific errors in the ALJ's evaluation of Plaintiff's domains of functioning.  Moreover, the Court easily concludes that the ALJ's findings regarding Plaintiff's functional limitations are supported by substantial evidence.  Significantly, the ALJ's findings are consistent with Plaintiff's kindergarten teacher's November 26, 2002 assessment, *see* A.R. at 87-94, as well as with the conclusions reached in the Childhood Disability Evaluation Form completed by Patricia Cott, Ph. D. and Julian Perry, M.D.  *See* A.R. at 138-43.  The Court therefore rejects Plaintiff's arguments–procedural as well as substantive–that the ALJ erred in determining that Plaintiff's condition was not functionally equal to a listed impairment.

## IV:  CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the

Court finds that the Administrative Law Judge applied the correct legal standards when he denied

Plaintiff's claim for Supplemental Security Income Benefits, and that his conclusions are

supported by substantial evidence.  The Court shall therefore deny Plaintiff's Motion for

Judgment of Reversal and grant Defendant's Motion for Judgment of Affirmance.  An

appropriate Order accompanies this Memorandum Opinion.

Date:   May 23, 2008

                            _/s/_____
                            COLLEEN KOLLAR-KOTELLY
                            United States District Judge